UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

03 JAN 15 AM 9: 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

FREDERICK MARK FLEGAL,     )
                           )
    Plaintiff,           )
                           )
vs.                         )   Civil Action No. CV-01-3178-NE
                           )
ADVANCE STORES COMPANY, INC., )
d/b/a ADVANCE AUTO PARTS,    )
                           )
    Defendant.         )

ENTERED

JAN 15 2003

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

Plaintiff, Frederick Mark Flegal, alleges that his former employer subjected him to age discrimination, ultimately leading to the termination of his employment, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*. Plaintiff also alleges that his termination was in retaliation for his opposition to sexual harassment of a co-employee, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. The action now is before the court on defendant's motion for summary judgment.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

19

In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that defendant's motion for summary judgment should be granted.

## I. SUMMARY OF FACTS

Defendant, Advance Stores Company, Inc., operates a chain of retail stores that sell automobile parts and accessories under the trade name "Advance Auto Parts."[1] Plaintiff was hired by defendant in 1996 as an auto parts salesman.[2] Over the succeeding years, plaintiff rose through the ranks and, on September 3, 2000, he was promoted to manager of store number 9150, located in Huntsville, Alabama.[3] During his tenure as store manager, plaintiff's immediate supervisor was Charlie Richardson, a division manager who supervised sixteen Advance Auto Parts stores.[4] Richardson was in turn supervised by Evander Gerald, a regional supervisor in charge of approximately two hundred such stores.[5]

---

[1] Defendant's motion for summary judgment, at 3.

[2] Defendant's evidentiary submissions (Flegal deposition), at 24.

[3] *Id.* at 65.

[4] *Id.* (Richardson deposition), at 13, 16, 18.

[5] *Id.* (Gerald deposition), at 24.

-2-

## A.    Plaintiff's Reprimand

Defendant purports to have a written policy stating that, when a manager leaves his store, he must leave another management employee in charge of the location, along with the store keys and computer system passwords.[6]  The court was unable to locate a copy of that policy among the parties' evidentiary submissions, however.  In any event, defendant contends that plaintiff violated this policy when he left the store to attend a company meeting on January 12, 2001, and delegated control of the store to Tina Baham, a non-management employee.[7]  In addition to leaving Baham in charge of the store, plaintiff entrusted her with the store keys and computer system passwords.[8]  Plaintiff's violation of company policy was discovered on January 16, 2001, when his supervisor, Charlie Richardson, visited plaintiff's store, and Baham informed Richardson that she had been left in charge of the store four days earlier.[9]  Richardson then questioned plaintiff about the incident.[10]  Plaintiff said that he understood such delegation to be "an accepted practice."[11]  Richardson found plaintiff's explanation unacceptable, and issued an "Employee Action Report," which informed plaintiff that his employment would be terminated if he again left a non-management employee in charge of the store.[12]  No further action was taken against plaintiff regarding the incident.[13]

---

[6] Defendant's evidentiary submissions (Flegal deposition), at Exhibit 8 (Employee action report January 16, 2001).  The report repimanded plaintiff for "violation of Rule 46, section 2 of operations manual."  A copy of that manual is not among the parties' evidentiary submissions.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 127-28.

[10] *Id.* at 128.

[11] *Id.* at 122.

[12] Defendant's evidentiary submissions (Flegal deposition), at Exhibit 8 (Employee action report January 16, 2001).

[13] *Id.* at 131-32.

**B.     Plaintiff's Allegation that Richardson Sexually Harassed Baham**

Shortly after being issued the January 16th reprimand, plaintiff telephoned Anthony Weatherly, senior vice president of store operations, and complained that Richardson was sexually harassing Tina Baham.[14]  While plaintiff's recitation of the facts is largely unorganized, it appears that his allegation was based on the following incidents:

(1)     Plaintiff vaguely testified that, on some date that he could not recall, he perceived that "Tina [Baham] had been upset, and she had expressed concern to me at the time . . . .  It was a daily thing almost of Tina making statements about Charlie [Richardson]."[15]  Plaintiff asked Baham if she wanted him to report Richardson, "and she said yes."[16]  Plaintiff's deposition testimony does not give any specifics as to what Baham was upset about, nor why she wanted plaintiff to report Richardson.

(2)     On or about October 4, 2000, Richardson sent the employees at plaintiff's store two e-mails, which plaintiff believed were inappropriate.  The first stated "[t]hanks to Tina [Baham] for her help . . . everyone knows she really runs the Huntsville market anyway!  For her assistance she receives the 'My hero of the Period' award . . . prize to be determined at a later date."[17]  The second e-mail jokingly referred to Baham as "The Grinch" when discussing shipment of holiday inventory items that were selling rapidly.  Richardson then stated that "Tina [Baham] is not really a Grinch . . . she reminds me more of Max . . . that cute little dog who gets converted into a one antlered reindeer."[18]

(3)     On or about October 4, 2000, Baham sent Richardson an e-mail stating that "I do not feel comfortable speaking at the Managers meeting next Wednesday. . . . I hope that this does not cause you any inconvenience."[19]  Plaintiff claims that Baham was so concerned about speaking at the manager's meeting that she threatened to quit and stated that speaking at such a meeting was "not part of her job."[20]  Baham did not speak at the manager's meeting, nor did she lose her job.[21]

---

[14] Defendant's brief in support of summary judgment, at 12; defendant's evidentiary submissions (Flegal deposition), at 73-74.

[15] Defendant's evidentiary submissions (Flegal deposition), at 76.

[16] *Id.* at 77.

[17] *Id.* at Exhibit 4.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 98.

[21] Defendant's evidentiary submissions (Flegal deposition), at 98.

(4)     On or about October 13, 2000, Richardson sent an e-mail to the personnel at plaintiff's store which said "[t]hank you, Tina [Baham]! You obviously do a better job monitoring on hands versus other stores . . . . See you soon . . . as soon as the aches and pains from my last visit with you subside."[22] Plaintiff felt that this e-mail also was inappropriate.[23] He claims that other employees teased Baham about the message.[24]

(5)     Richardson told plaintiff that he intended to make Baham his (Richardson's) secretary.[25]

(6)     On the day that plaintiff reported Richardson for sexual harassment, Baham left the store crying.[26]

(7)     Plaintiff perceived that Richardson spent a disproportionate amount of "one-to-one" time with Baham.[27]

(8)     Baham and Richardson had lunch together on at least one occasion.[28] Plaintiff testified that he felt that it was inappropriate for a district manager to take a female employee to lunch.[29]

(9)     On another occasion, Richardson asked Baham to make an overnight trip "to help him get caught up" at another store in his district.[30]

After plaintiff reported Richardson, one of defendant's risk management officials, Melvyn Halfon, was detailed to conduct an investigation.[31] He interviewed several employees, including the purported victim, Tina Baham. Baham stated that "Charlie Richardson has never done anything to make me feel uncomfortable. I know what a personal advance is and Mr. Richardson has never

---

[22] *Id.* at Exhibit 4.

[23] *Id.* at 93.

[24] *Id.* at 95.

[25] Plaintiff's brief opposing summary judgment, at 3.

[26] Defendant's evidentiary submissions (Flegal deposition), at 139.

[27] *Id.* at 143.

[28] *Id.* at 147-48.

[29] *Id.*

[30] Defendant's evidentiary submissions (Baham deposition), at 37-38.

[31] *Id.* (Halfon deposition), at 36.

made a personal advance towards me."[32] Halfon's investigation revealed no evidence to substantiate

plaintiff's claim, nor any other person who felt that Richardson had sexually harassed Baham.[33]

Apparently, Halfon instead hypothesized plaintiff's sexual harassment complaint was motivated by

plaintiff's personal dislike of Richardson.  In a written question posed to plaintiff during his

investigation, Halfon stated that "it appears that . . . your complaint centers around a personal

conflict between yourself and Charlie Richardson.  This is based on your description of a

confrontation you had with Charlie [Richardson] . . . and the disciplinary notice [Richardson] gave

you a week or so ago.  Please explain."  (The document recording the foregoing statements is dated

January 24, 2001.)  Plaintiff's handwritten response, which is difficult to read, then restated the

reasons why plaintiff believed that Richardson was sexually harassing Baham.[34]  Upon completion

of his investigation, Halfon reported the results of his investigation to corporate headquarters.[35]

## C.    Plaintiff's Termination

After Halfon submitted his report, Regional Supervisor Evander Gerald traveled to

Huntsville and met with plaintiff on February 1, 2001.[36]  The following day, Gerald met with

Richardson, who denied that he had sexually harassed Baham.[37]  Gerald also had the opportunity to

speak with Baham's husband, who told Gerald that he did not believe that Richardson had harassed

his wife.[38]  Mr. Baham further stated that his wife no longer wanted to work at store number 9150,

---

[32] *Id.* at Exhibit 30.

[33] *Id.* at Exhibit 30 (page number 176).  In a written question posed to plaintiff, Halfon wrote "[Baham] did not say anything to substantiate your allegations that Charlie Richardson was making her feel uncomfortable.  In fact, other employees at Store 9150 would not substantiate those allegations made by you."

[34] *Id.* at Exhibit 30 (page numbers 175-77).

[35] *Id.* at 155.

[36] Defendant's evidentiary submissions (Gerald deposition), at 95, 98.

[37] *Id.* at 130.

[38] *Id.* at 74-75; Scott Baham affidavit ¶¶ 2-4.

because she was uncomfortable about continuing to work with plaintiff.[39]  After meeting with plaintiff, Richardson, and Mr. Baham, and reviewing Halfon's investigative report, Gerald determined that plaintiff had made false and malicious allegations against Richardson, and he terminated plaintiff's employment.[40]  Plaintiff was 53 years old on the date of his termination.[41]

## D.    Plaintiff's Replacement

Harold Smith, assistant store manager at plaintiff's location, was temporarily placed in charge of store number 9150 following plaintiff's termination.[42]  Near the end of February, Richardson interviewed Smith (age 44) and one other candidate, Ed Rittenour (age 66), to fill plaintiff's vacated position.[43]  Richardson determined that both candidates were qualified for the job, but selected Smith, since he already was familiar with the location.[44]

## II. DISCUSSION

## A.    Retaliation

Plaintiff asserts that defendant terminated his employment in retaliation for his complaint that Charlie Richardson had sexually harassed one of plaintiff's subordinates, Tina Baham.

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate

---

[39] *Id.*

[40] Defendant's evidentiary submissions (Gerald affidavit), at 136.

[41] *Id.* (Flegal deposition), at 8.  Plaintiff's date of birth is December 4, 1947.

[42] *Id.* (Smith deposition), at 64.

[43] *Id.* (Richardson deposition), at 82; defendant's motion for summary judgment, at 20.

[44] Defendant's evidentiary submissions (Richardson deposition), at 82-83.

-7-

against any of his employees or applicants for employment . . . because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Congress thus recognized two predicates for retaliation claims: one for *opposition* to discriminatory practices, and another for *participation* in protected activity.

Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." . . . And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted).

A Title VII retaliation claim can be proven by either direct or circumstantial evidence. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796 & n.4, 93 S. Ct. 1817, 1821 & n.4, 36 L. Ed. 2d 668 (1973);[45] *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-91 (11th Cir. 1997); *Kent v. City of Homestead*, No. 00-3601-CIV, 2002 WL 732109, at *8 (S.D. Fla. March 14, 2002).

Direct evidence is generally defined as evidence which, if believed, proves the existence of a fact in issue without the need of an inference or presumption. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1111 (11th Cir. 2001) (holding that the term "direct evidence," when used in the context of Title VII race discrimination claim, "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination").[46]

---

[45] The plaintiff in *McDonnell Douglas* alleged, among other matters, that the defendant had refused to re-employ him in retaliation for his participation in a so-called "stall-in" and "lock-in," activities protected by the opposition clause of 42 U.S.C. § 2000e-3(a). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796 & n.4, 93 S. Ct. 1817, 1821 & n.4, 36 L. Ed. 2d 668 (1973).

[46] *See also, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion."); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (defining direct evidence of

In the context of a Title VII retaliation claim, however, direct evidence may be more precisely defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998) (in turn quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990))). In *Merritt v. Dillard Paper*, for example, the Eleventh Circuit held that a statement made by the president of a corporate employer to the plaintiff prior to firing him, concerning deposition testimony given by the plaintiff in a sexual harassment suit filed by a female co-employee — *i.e.*, "[y]our deposition was the most damaging to Dillard's case, and you no longer have a place here at Dillard Paper Company" — was direct evidence of a retaliatory motive: "The statement made in the present case is the equivalent of 'Fire Merritt — he gave the most damning deposition testimony.'" *Merritt*, 120 F.3d at 1190.

There is no similar evidence of a retaliatory motive in this case and, consequently, plaintiff must prove his retaliation claim by means of circumstantial evidence. When evaluating employment discrimination claims supported by circumstantial evidence, courts are guided by the analytical framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct 1817, 36 L. Ed. 2d 668 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Under that now familiar framework, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *McDonnell*

---

discrimination as evidence which, "if believed, proves [the] existence of [a] fact in issue without inference or presumption"); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (same); *Earley v. Chamption Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (same).

*Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *see also Burdine*, 450 U.S. at 253-54 & n.6, 101 S. Ct. at 1093-94 & n.6. "The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094). To rebut the presumption of intentional discrimination raised by a plaintiff's demonstration of a prima facie case, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [contested employment decision]." *Burdine*, 450 U.S. at 255, 101 S. Ct. at 1094. If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine*, 450 U.S at 257, 101 S. Ct. at 1096, the presumption of discrimination created by the prima facie case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10, 101 S. Ct. at 1094-95 & n.10. The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095; *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). If a plaintiff does so, then he or she

-10-

"is entitled to survive summary judgment." *Combs*, 106 F.3d at 1529. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106.

Generally speaking, a plaintiff must prove three elements to establish a prima facie case of retaliation: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

In addition to these elements, when a retaliation claim is based upon conduct falling under Title VII's opposition clause the plaintiff also must demonstrate a good faith, reasonable basis for believing that the allegedly discriminatory practices he opposed constituted a violation of Title VII, as distinguished from proving that the employer actually engaged in an unlawful employment practice. *See, e.g., Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir. 2001); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). This additional element of a prima facie case for a retaliation claim under the opposition clause has two constituent parts — a subjective and an objective component — as the Eleventh Circuit observed in *Little v. United Technologies*:

> A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his

-11-

belief was *objectively* reasonable in light of the facts and records presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

A plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a *prima facie* case and overcome a motion for summary judgment; such a requirement "[w]ould not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances." *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir. 1978). *See also Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981) ("To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of [Title VII] if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices."), *cert. denied,* 455 U.S. 1000, 102 S. Ct. 1630, 71 L. Ed. 2d 866 (1982).

*Little,* 103 F.3d at 960 (emphasis in original) (footnote omitted); *see also, e.g., Harper,* 139 F.3d at 1388; *Meeks,* 15 F.3d at 1021; *EEOC v. White & Sons Enterprises,* 881 F.2d 1006, 1012 n.5 (11th Cir. 1989); *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir. 1989); *Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir. 1978); I Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 656-57 (3d ed. 1996) ("The rationale is that appropriate opposition should not be chilled by fear of retaliation — even if, as a matter of fact or law, there is no violation.") (footnote omitted).

Further, "the objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against the existing law." *Clover v. Total Systems Services, Inc.,* 176 F.3d 1346, 1351 (11th Cir. 1999); *see also, e.g., Lipphardt,* 267 F.3d at 1187 ("The belief must also be measured against substantive law at the time of the offense.") (citing *Clover*).

Here, plaintiff asserts that his opposition to Richardson's "sexual harassment" of Tina Baham

-12-

was a statutorily-protected activity.  Even assuming that plaintiff subjectively believed that Richardson had sexually harassed Baham, the objective facts clearly demonstrate that there was no reasonable basis for such a belief.  Plaintiff has cited no authority that would suggest the incidents he reported could reasonably be construed as sexual harassment.  While it is true that the conduct opposed need not actually be unlawful sexual harassment, "it must be close enough to support an objectively reasonable belief that it is." *Clover,* 176 F.3d at 1351.  Indeed, to borrow a phrase from the *Clover* court, "the conduct [plaintiff] described misses the mark by a country mile." *Id.* Accordingly, plaintiff's assertion that Richardson's conduct constituted sexual harassment was not objectively reasonable, as measured against existing law, and his retaliation claim is due to be dismissed.

Even if plaintiff had established a prima facie retaliation claim, he failed to cast doubt upon defendant's stated, non-discriminatory reason for his termination: namely, that defendant believed plaintiff had made "false and malicious statements against [a] company employee."[47] Two company officials conducted thorough investigations of plaintiff's allegations; both determined that his charge was untrue; and, Regional Supervisor Evander Gerald accordingly fired him.[48] The Eleventh Circuit held in *Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171 (11th Cir. 2000), that the opposition clause affords no protection to false statements made by an employee in the workplace, prior to the filing of a formal EEOC charge (and, thereby, the implication of the participation clause).

> Even if false statements made in the context of an EEOC charge (per the participation clause) are protected and cannot be grounds for dismissal or discipline, *see Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir. 1969)

---

[47] Defendant's evidentiary submissions (Gerald deposition), at Exhibit 31 (Payroll Change Notice Feb. 2, 2001).
[48] *Id.* at 93.

-13-

(concluding that employee cannot be fired for anything written in EEOC charge), this extreme level of protection for untruth is not afforded to false statements made under the opposition clause. *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("Accusations made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril.").

The statutory retaliation provision has two distinct components. Both offer employees some protection, but that these two components should offer two different levels of protection is consistent with the plain reading and purposes of the statute. The participation clause includes activity done in connection with proceedings conducted by the federal government and its agencies: an employee has invoked the jurisdiction of the federal government through its agency, the EEOC. And we have held that expansive protection is available for these adjudicative kinds of proceedings run by the government. *See Pettway*, 411 F.2d at 1007.

Opposition clause acts, however, are taken outside of the context of a government review and, instead, are taken in the context of the ordinary business environment and involve employers and employees as employers and employees. As in this case, whether to fire an employee for lying to the employer in the course of the business's conduct of an important internal investigation is basically a business decision; this decision, as with most business decisions, is not for the courts to second-guess as a kind of super-personnel department. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (noting that court is not concerned with whether employment decision was prudent or fair but only with whether it was motivated by unlawful discriminatory animus).

The EEOC argues that Defendant, to avoid liability under Title VII, must prove that [the plaintiff] in fact, lied. But we cannot agree that an employer must be forced to prove — presumably in a court of law — more than its good faith belief that a false statement was knowingly made. In the kind of investigation involved in this case, the employer is not acting pursuant to the statute or under color of law, but is conducting the company's own business.

When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true? When the resulting employer's investigation (not tied to the government) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions — that is, to accept one as true and to reject one as fictitious — at least, as long as the choice is an honest choice. And, at least when the circumstances give the employer good reason to believe that the fictitious version was the result of a knowingly false statement by one of its employees, the law will not protect the employee's job.

False statements impair the employer's ability to make sound judgments that

-14-

may be important to the employer's legal, ethical and economic well-being. So, an employer is entitled to expect and to require truthfulness and accuracy from its employees in an internal investigation that is exploring possibly improper conduct in the business's own workplace. (For example, we readily suppose an employee — a nonharassing employee — could be fired if the employer had reason to believe the employee was concealing harassing conduct from the employer's investigation.) And, in carrying out its business and in making business decisions (including personnel decisions), the employer can lawfully act on a level of certainty that might not be enough in a court of law. In the workaday world, not every personnel decision involving a false statement (or a cover-up) has to be treated as something like a trial for perjury. Therefore, an employer, in these situations, is entitled to rely on its good faith belief about falsity, concealment, and so forth. *Cf. Damon*, 196 F.3d at 1363 n.3 ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995) ("Pretext is not demonstrated by showing simply that the employer was mistaken.").

Warren could properly be discharged based on Defendant's good faith belief that she lied in an internal investigation. In other words, Defendant offered a legitimate nondiscriminatory reason for Warren's termination: Defendant concluded that she had lied in an internal investigation. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination); *see also O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 762 n. 6 (9th Cir. 1996) ("[A]n employer's discrimination does not immunize its employees from consequences of their wrongdoing.").

*Total System Services*, 221 F.3d at 1175-77 (footnotes omitted).

It is important to note that the issue here is not whether plaintiff actually lied when he lodged his grievance against Richardson; rather, the dispositive inquiry is whether Regional Supervisor Evander Gerald had a good faith belief that plaintiff had not spoken the truth. Halfon conducted a thorough investigation, during which several individuals were interviewed — including the purported victim, who unambiguously stated that "Charlie Richardson has never done anything to make me feel uncomfortable. I know what a personal advance is and Mr. Richardson has never

made a personal advance towards me."[49]   Halfon's investigative report, together with other information independently gathered by Gerald, gave Gerald a good faith basis for terminating plaintiff on the ground that he had made "false and malicious statements" about Richardson.

Plaintiff has not shown that defendant's articulated reason for his termination is pretextual. Instead, he quibbles with the thoroughness of defendant's investigation, and hypothesizes that "the investigation conducted in this case was designed to protect the company, not to determine the truth."[50]  However, the issue is not whether defendant's investigation left no stone unturned, or followed some particular protocol, but whether it was sufficiently thorough to provide defendant an objective, good faith basis for believing that plaintiff had knowing made false statements during an important internal investigation.   This court finds that defendant's investigation was clearly sufficient for that purpose.

## B.    Age Discrimination

Plaintiff's age discrimination claim casts a wide net; in his brief, plaintiff asserts that he "was the victim of discrimination based upon his age.  The discriminatory conduct affected all the terms and conditions of his employment.  Specifically, the defendant's discriminatory conduct affected his performance reviews, promotion opportunities, disciplinary actions, and ultimately his termination."[51]

In ADEA cases, the plaintiff has the ultimate burden of proving that his age was a determinative factor in the employer's adverse employment decision.

> When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."

---

[49] Defendant's evidentiary submissions (Halfon deposition), at Exhibit 30.

[50] Plaintiff's brief opposing summary judgment, at 27.

[51] *Id.* at 11.

> *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338
> (1993).   That is, the plaintiff's age must have "actually played a role in [the
> employer's decisionmaking] process and had *a determinative influence* on the
> outcome." *Ibid.* . . .

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed.

2d 105 (2000) (alteration in original) (emphasis supplied).

There are three methods by which a plaintiff may prove an employer's intention to

discriminate on the basis of age: "by direct evidence of discriminatory intent; by meeting the test

originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct.

1817, 36 L. Ed. 2d 668 (1973); or by statistical proof of a pattern of discrimination." *Verbraeken*

*v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989); *see also, e.g., Alphin v.*

*Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833

F.2d 1525, 1528 (11th Cir. 1987).[52]

## 1.    Direct evidence analysis

Here, plaintiff claims to have direct evidence of defendant's discriminatory animus.  As

discussed in Section II(A) *supra*, direct evidence is generally defined as evidence which, if believed,

proves the existence of a fact in issue without the need of an inference or presumption.[53]  Eleventh

Circuit precedent clearly establishes, however, that only the most blatant remarks, whose intent

could be nothing other than to discriminate on the basis of some impermissible characteristic, will

be deemed to constitute direct evidence of discrimination.   *See, e.g., Earley v. Champion*

*International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (holding, in the context of an ADEA

claim, that the quintessential example of direct evidence would be "a management memorandum

---

[52] "Only the most blatant remarks, whose intent could only be to discriminate on the basis of age constitute direct evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1992).

[53] *See supra* note 47 and accompanying text.

saying, 'Fire Earley — he is too old.'"); *see also Damon*, 196 F.3d at 1358-59 (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (same).  Evidence that merely suggests a discriminatory motive, *see Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999), or that is subject to more than one interpretation, *see Harris v. Shelby County Board of Education*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996), "does not constitute direct evidence." *Merritt v. Dillard Paper*, 120 F.3d at 1189.

Two additional points must be emphasized.  First, "stray remarks in the workplace . . . cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775, 1804-05, 104 L. Ed. 2d 268 (1989) (O'Connor, J., concurring).  Second, "statements made by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself," do not constitute direct evidence of discriminatory intent. *Id.*; *see also Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (same).  "For statements of discriminatory intent to constitute direct evidence of discrimination, *they must be made by a person involved in the challenged decision.*" *Trotter v. Board of Trustees of the University of Alabama*, 91 F.3d 1449, 1453-54 (11th Cir. 1996) (emphasis supplied); *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 701 (11th Cir. 1998) ("A statement by a person who played no part in the adverse personnel decision is not direct evidence of discrimination.") (citing *Mauter v. The Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir. 1987)); *Eiland v. Trinity Hospital*, 150 F.3d 747, 751-52 (7th Cir. 1998) (rejecting plaintiff's attempts at imputing racial animus of co-worker to decisionmaker).

In summary, "[t]o amount to direct evidence, a statement must:  (1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant

discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).

Plaintiff claims that the following excerpts from his deposition testimony constitute direct evidence of defendant's discriminatory animus:

Q:   You say in your E.E.O.C. charge that Charlie Richardson always made comments about your age?

A:   That's true.

Q:   What were those comments?

A:   Every time Charlie and I ever had a meeting there was mention of my age or us old guys or, you know, us old folks ain't gonna change.  Always some comment to that effect in almost every meeting we ever had.

Q:   What was he saying about your age or us old guys?

A:   What was he saying?

Q:   Right.  In what context was that used?

A:   I don't know if he got pleasure out of telling me I was old or what, ma'am, but that's — I mean, that's the only reason I can think of for him to bring it up.  Why else would he bring up my age?

Q:   I think you said he brought up his age, too?

A:   Charlie is not my age.  Charlie is much younger.

Q:   He said, us old guys?

A:   He may have said it in that term.  He wasn't referring to himself as being old no matter how it was put, I didn't feel anyway.  He made it very clear that it was me.

Q:   In your charge, again, if you will look on page 1, the second line to the bottom says, sometimes referring to himself and myself as being older persons?

A:   That's what I just got through saying.

Q:      I thought you just said he didn't include himself?

A:      He said us old folks or whatever, but Charlie is not as old or not nearly as old as I am.

Q:      What was an example where he would say something about us old guys or — I mean, give me the rest of the sentence.

A:      I don't know, other than just to say — I mean, things like being set in my ways and not going to change, that's one statement that he made.

Q:      He said you were set in your ways?

A:      Uh-huh.[54]
        . . .

Q:      You claim that Evander Gerald made comments about your age.  What comments did he make?

A:      One specifically was when we were going into the restaurant, he told me to go first, that age before beauty.

Q:      And who went in first?

A:      I went in first.  He told me — he was telling me to go ahead, and he was my boss, so I did.
        . . .

Q:      Do you claim that Evander Gerald made any other age-related comments?

A:      I think at the time it was the only — that was the only one I can recall.[55]

These comments are not direct evidence, because they do not reflect, without inference, an intent to discriminate against plaintiff because of his age.  *See Damon*, 196 F.3d at 1358-59; *Schoenfeld*, 168 F.3d at 1266; *Earley*, 907 F.2d at 1081-82 (11th Cir. 1990); *Carter*, 870 F.2d at 582. These statements are, at most, stray remarks.  Accordingly, plaintiff cannot prove his age discrimination claim with direct evidence.

---

[54] Defendant's evidentiary submissions (Flegal deposition), at 103-05.

[55] *Id.* at 112-13.

2.      **Circumstantial evidence analysis**

Plaintiff also asserts that he can prove his age discrimination claim with circumstantial evidence, utilizing the *McDonnell Douglas* framework discussed in Section II(A) *supra*. Although *McDonnell Douglas* and its progeny involved discrimination claims under Title VII, a variant of the analysis also applies to claims based upon the ADEA. *See Reeves*, 530 U.S. at 141-42, 120 S. Ct. at 2105 (noting widespread use of *McDonnell Douglas* framework to analyze ADEA claims that are based on circumstantial evidence, and assuming its applicability) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996) (assuming that *McDonnell Douglas* analytical framework applies to ADEA claims based on circumstantial evidence)); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987) ("This court applies a slightly modified version of the test set forth in *McDonnell Douglas Corp. v. Green*" when evaluating the strength of circumstantial evidence to prove a prima facie case of age discrimination.).

In all cases arising under the ADEA in which the plaintiff seeks to prove age discrimination by means of circumstantial evidence, the plaintiff bears the initial burden of establishing a prima facie case. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Chapman*, 229 F.3d at 1024; *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217 (11th Cir. 1993). "If a plaintiff establishes a prima facie case . . . the employer must articulate a legitimate, nondiscriminatory rationale for the [contested employment action]. If the employer does so, the burden shifts back to the plaintiff to prove that the employer's asserted reason is pretextual." *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988); *see also Chapman*, 229 F.3d at 1024.

Here, the court will first examine that portion of plaintiff's age discrimination claim relating

to his termination, and then consider the remaining parts.

### a.     Plaintiff's termination

In order to make out a prima facie case for an ADEA violation based upon termination of employment, the plaintiff must show: (1) that he was a member of the class of persons protected by the ADEA, that is, individuals between the ages of 40 and 70;[56] (2) that he was discharged; (3) that he was qualified to perform the duties of the job from which he was dismissed; and (4) that a substantially younger person replaced him. *See, e.g., Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656-57 (11th Cir. 1998); *Turlington v. Atlanta Gas Light* Co., 135 F.3d 1428, 1432 (11th Cir. 1998); *Jameson v. Arrow Company*, 75 F.3d 1528, 1531 (11th Cir. 1996); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1469-70 (11th Cir. 1991); *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989. The plaintiff is not required to prove that he was replaced by someone less than 40 years of age, but only by someone "substantially younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996).[57]

Even assuming that plaintiff can meet those elements of a prima facie case, his termination claim fails for the same reason his retaliation claim failed:  that is, defendant has articulated a

---

[56] The protections of the ADEA extend to those individuals who "are at least 40 years of age but less than 70 years of age."  29 U.S.C. § 621(a).

[57] The Eleventh Circuit expounded the "substantially younger" requirement in *Corbin v. Southerland Intern. Trucks*, 25 F.3d 1545, 1549 (11th Cir. 1994), saying:

> Unlike race and sex discrimination cases, the plaintiff in an age discrimination case need not necessarily prove that his replacement was outside the protected class, that is, under forty years of age. The plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination.

legitimate, non-discriminatory reason for plaintiff's discharge, which has not been proven to be pretextual.

### b.       Remainder of plaintiff's age discrimination claim

Plaintiff asserts that age discrimination affected "his performance reviews, promotion opportunities, [and] disciplinary actions. . . ."[58] The court begins by noting that any of these events that occurred more than 180 days prior to the filing of plaintiff's EEOC charge are due to be dismissed as untimely. *See* 42 U.S.C. § 2000e(5)(e)(1). Plaintiff filed his EEOC charge on July 11, 2001, and at least some of the incidents giving rise to plaintiff's age discrimination claim are not timely.

Unfortunately, plaintiff's argument regarding many of the incidents that he complains of is so vague that the dates on which the events allegedly occurred cannot be ascertained, nor can their substantive merit be evaluated. For example, plaintiff asserts that "[h]e was denied promotions on several occasions."[59] Plaintiff does not favor the court with a citation to the record to support this contention, however, much less any explanation as to how denial of such promotions constituted age discrimination. Such a generalized allegation falls far short of establishing a genuine issue of material fact. Accordingly, that portion of plaintiff's age discrimination claim based on promotions that he did not receive is due to be dismissed.

Plaintiff next claims that "[h]e was given reviews lower than those of younger employees with similar performances."[60] Again, plaintiff provides very little factual support for this contention. (The one performance evaluation that plaintiff does cite is dated August 13, 2000, *almost two years*

---

[58] Plaintiff's brief opposing summary judgment, at 11.

[59] *Id.* at 15.

[60] *Id.* at 15.

before plaintiff filed his EEOC charge and, thus, it is not timely.[61]) Instead, plaintiff launches into an argument about whether his performance evaluations were adverse employment actions (which they were not, for the reasons discussed in the following paragraphs).[62]

Plaintiff also claims that the reprimand he received on January 16, 2001 — for leaving the store in the control of a non-management employee — was motived by age discrimination. However, plaintiff's claim as to this incident fails because that admonishment had no detectable effect on plaintiff's employment. Disciplinary measures taken against an employee must rise to some level of substantiability before they can form the basis of an age discrimination claim. An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Bass*, 256 F.3d at 1118 (citing *Gupta*, 212 F.3d at 587). "Although adverse employment actions may include reprimands . . . the action in question must have more than a tangential effect on the ultimate employment decision . . . . Indeed, the conduct in question must rise to a substantial level before it can be cognizable as unlawful discrimination." *Hanley v. Sports Authority*, 143 F. Supp. 2d 1351, 1356 (S.D. Fla. 2000) (discussing a racially-disparate treatment claim) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998); *Mattern v. Eastman Kodak*, 104 F.3d 702, 708 (5th Cir. 1997); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)); *see also Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) (holding that unfair reprimands or negative performance evaluations of employee, unaccompanied by some

---

[61] Defendant's evidentiary submissions (Flegal deposition), at Exhibit 6 (Flegal performance evaluation Aug. 13, 2000).

[62] Plaintiff's brief opposing summary judgment, at 15-16.

-24-

tangible job consequence, do not constitute adverse employment actions); *Oest v. Illinois Department of Corrections,* 240 F.3d 605, 613 (7th Cir. 2001) (holding that, even though "each oral or written reprimand brought [plaintiff] closer to termination," they still did not form an independent basis for liability under Title VII because, "absent some tangible job consequence accompanying the reprimands, we decline to broaden the definition of adverse employment action to include them (quotations omitted)"). Here, plaintiff has not pointed to any consequence related to the written rebuke that he received, and thus it cannot reasonably be construed as an adverse employment action. It follows that no ADEA action can rise solely from the issuance of that reprimand.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted as to all of plaintiff's claims. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __15<u>th</u>__ day of January, 2003.

_____
United States District Judge